Genuine Motor Parts of Pennsylvania, Inc. v. Commissioner.
Genuine Motor Parts of Pennsylvania, Inc. v. Commissioner
Docket No. 10793.
United States Tax Court
1947 Tax Ct. Memo LEXIS 112; 6 T.C.M. (CCH) 927; T.C.M. (RIA) 47229; August 12, 1947
*112 John D. S. Truxall, Esq., for the petitioner. A. W. Dickinson, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies for the year ended December 31, 1941, in income tax, declared value excess-profits tax, and excess-profits tax, in the respective amounts of $1,131.46, $625.96, and $1,247.62. The deficiencies result from respondent's disallowance of deductions of $4,800, claimed as salary paid to two employees, and of $2,175.69, claimed as part of an addition to a reserve for bad debts. Some of the facts have been stipulated. Findings of Fact The stipulated facts are hereby found accordingly. Petitioner was incorporated on July 29, 1937. It filed its tax returns on a calendar year accrual basis with the collector for the twenty-third district of Pennsylvania. Petitioner's total outstanding stock, in the amount of $500, was owned by The Gettman Lind Company, another Pennsylvania corporation, whose sole stockholders were C. M. Gettman and F. J. Lind. Gettman Lind was engaged in the business of distributing tires and batteries, and some time in 1937 it was decided to organize a motor parts *113 business. In order to give that operation a distinctive trade name, petitioner was to be incorporated. Prior to petitioner's incorporation, and some time in June, 1937, Gettman Lind entered into an agreement with P. A. Levinson and J. J. Minard, two experienced parts men, to employ them to carry on the parts business. The agreement, in which Gettman Lind was designated as the "Company", provided in part as follows "WHEREAS, the COMPANY desires to employ LEVINSON and MINARD, and LEVINSON and MINARD desire to enter the employ of the COMPANY; and, "WHEREAS, the parties hereto deem it expedient to reduce the terms of said employment to writing, * * *
"* * * The COMPANY will forthwith enter into the business of dealing generally in all kinds of automobile and automotive parts in addition to the tires and batteries already handled. * * *
"* * * The COMPANY will cause Genuine Motor Parts of Pennsylvania, Inc. to be incorporated under the laws of the Commonwealth of Pennsylvania, having authorized capital of Five Thousand ($5000.00) Dollars, of which only Five Hundred ($500.00) Dollars of said common capital stock shall be presently issued and all of which shall be held *114 by The COMPANY. The directors of said Genuine Motor Parts of Pennsylvania, Inc. shall be for the first year, or until their successors shall be duly elected and qualified, Frederick J. Lind, Clarence M. Gettman and William B. Paul, from which directorate, the officers of said corporation shall be chosen, provided, however, that said Genuine Motor Parts of Pennsylvania, Inc. shall be used only as a trade name for a division of the COMPANY, the said COMPANY having all the assets and incurring all the liabilities incident to the operation of the automobile and automotive parts business contemplated by this agreement. "* * * The COMPANY will cause to be set aside Thirty Thousand ($30,000.00). Dollars in or three hundred (300) shares of its common capital stock for the purpose of providing compensation for LEVINSON and MINARD as hereinafter set forth and subject to the terms and conditions of this agreement. "* * * The salary of LEVINSON and MINARD, so long as they shall be actively engaged in the business of the COMPANY, shall be as follows: Three Hundred ($300.00) Dollars per month in cash each; payable in two (2) payments of One Hundred Fifty ($150.00) Dollars the first (1st) and *115 fifteenth (15th) of each month; two (2) shares of the common capital stock of the COMPANY per month each to be delivered on the last day of each month during the time when this agreement shall remain in force; and an amount up to, (if necessary), Fifty ($50.00) Dollars per month each for entertainment expenses, payable on the last day of each month. After the Thirty Thousand ($30,000.00) Dollars in common capital stock shall have been issued to them or either of them, the compensation of LEVINSON and MINARD, or either of them, shall be such as the Board of Directors may from time to time determine. As between the COMPANY and LEVINSON and MINARD, or either of them, for all capital stock issued to them, they, or either of them, shall have full preemptive rights so long as said stock shall belong to them, or either of them, and they or either of them shall be actively engaged in the business of the COMPANY. If either LEVINSON or MINARD shall leave the employ of the COMPANY, then the entire remaining unissued portion of the Thirty Thousand ($30,000.00) Dollars in common capital stock set aside for them shall be available and issued to the one remaining with the COMPANY at the rate of *116 two (2) shares per month in addition to his cash salary until the entire Thirty Thousand ($30,000.00) Dollars in common capital stock shall have been issued, after which the salary of the one so remaining shall be determined from time to time by the Board of Directors. "* * * The COMPANY will cause LEVINSON and MINARD each to be made vice-presidents and directors of the COMPANY and agrees that LEVINSON shall be General Manager of the parts business." From the date of petitioner's incorporation, Levinson and Minard devoted their full time to its business. Their salaries, charged on petitioner's books, were as follows: Levinson
Minard
Year
Cash
Stock
Cash
Stock
1937
$1,575
$1,200
$1,575
$1,200
1938
2,595
None
2,595
None
1939
2,870
None
2,650
None
1940
3,000
None
2,975
None
1941
3,710
2,400
3,760
2,400
The stock transferred to Levinson and Minard in 1941 was obtained by petitioner from Gettman Lind in exchange for a demand promissory note, at a cost per share of $100, its par value. Respondent did not object to petitioner's deduction of the amount of 1941 salaries paid in cash to Levinson and Minard, but disallowed *117 the deduction for that portion of their salaries ($2,400 to each, or a total of $4,800) representing shares of $100 par value Gettman Lind stock turned over to them, and assigns as reasons therefor: "Of the deduction for compensation of officers which was taken in your return for 1941, a portion in the amount of $4,800.00, representing 24 shares of the capital stock of The Gettman-Lind Company which were issued (in accordance with the provisions of a contract between The Gettman-Lind Company and P. A. Levinson and J. J. Minard) to each of those individuals, has been disallowed." The sum of $6,110 to Levinson and the sum of $6,160 to Minard were reasonable compensation for their respective services. Prior to 1939, no separate returns were filed by petitioner, as it was considered a division of Gettman Lind. It did, however, keep separate accounting books and records. Thereafter, at the insistence of respondent, separate returns were filed. Toward the end of 1940, plans were undertaken looking to the merger of petitioner and Gettman Lind. During 1941 Gettman Lind transacted no business. Petitioner was to assume Gettman Lind's obligations and contracts, and also take over all *118 its assets. Finally, on October 8, 1942, the companies were merged into one corporation, bearing petitioner's name. In its tax return for 1941 petitioner showed an addition to reserve for bad debts of $4,494.57, increasing the reserve after total charges to it of $1,848.19, to $9,515.48. Respondent determined that the addition to the reserve to the extent of $2,175.69 was excessive. From 1939 through 1942, petitioner's (1) sales on credit, (2) additions to bad debt reserve, (3) charges against reserve, and (4) the amount of reserve on December 31 of each year were as follows: (1)
(2)
(3)
(4)
1939 $ $ $ $1,995.82
1940
130,249.30
3,907.48
497.48
6,869.10
1941
210,344.72
4,494.57
1,848.19
9,515.48
1942
231,407.55
3,430.22
7,344.79
6,051.27
The addition to the reserve in 1941 was the subject of discussion between Gettman, Lind, and G. J. Sabel, petitioner's accountant. An analysis of petitioner's sales, a large portion of which were to small one-man garages, whose owners were entering the Army, led them to conclude that the addition to the reserve should be about 2 1/2 percent of net charge sales for the year. $4,494.57 *119 was a reasonable addition to the reserve for bad debts for the year 1941. Opinion Respondent questions the deduction of part of the compensation paid to two of petitioner's employees, not on the ground that the compensation was unreasonable or that it was not paid, but because on his theory of the facts petitioner was not liable to make the payment. We think the record fails to sustain his position. Since the employees in question worked exclusively for petitioner, it would be reasonable to expect that the expense of their services would be borne by it. The contract in question was, it is true, executed prior to petitioner's organization and constituted an undertaking by its parent. But for a number of years the two were treated as a single unit although upon respondent's insistence their records and tax reporting were ultimately segregated. The contract was specifically assumed by petitioner. Since all of this occurred prior to the instant tax year, we think the liability, as well as the fact of the payment, was adequately shown. Respondent also attacks the amount of the deduction on the ground that the payment, which was in the stock of petitioner's parent corporation, has *120 not been shown. But since the deduction is being claimed by petitioner, it is the expense to it of acquiring the stock which constitutes the deductible amount. , affirmed (C.C.A., 9th Cir.), . Petitioner is on the accrual basis, and it undertook by its demand note a liability for payment for the stock in the amount claimed. This accordingly constitutes the amount of the allowable deduction. The second issue involves the propriety of a deduction for an addition to petitioner's bad debt reserve. Both the increase in the credit business and the confirmation furnished by subsequent developments, , justify petitioner's judgment in seeking to build up its reserve for uncollectibles. Certainly, in view of all the circumstances, the amount of the additions was not so excessive or unreasonable as to justify its disallowance in disregard of the operating judgment of petitioner's responsible officers. See . Respondent's determination is disapproved. Decision *121 will be entered under Rule 50.